**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| **ENDURANCE WARRANTY SERVICES, L.L.C., an Illinois limited liability company,**<br><br>Plaintiffs,<br>v.<br><br>**EMPIRE AUTO PROTECT, LLC, a Delaware limited liability company,**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Jury Demand** |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Endurance Warranty Services, L.L.C. ("Endurance" or "Plaintiff"), for its Complaint for Injunctive and Other Relief against Defendant Empire Auto Protect, LLC ("Empire"), states as follows:

**NATURE OF THE ACTION**

1. This is an action for injunctive relief and damages arising out of Empire's trademark infringement, false advertising, and unfair competition. Endurance brings its claims under the Lanham Act and state common law. Rather than fairly compete, Empire has engaged in a multi-jurisdictional scheme, where they are targeting and contacting Endurance's customers, by using deceptive online advertising and telephone calls to Endurance's customers. During these calls to Endurance customers, Empire holds itself out as "Endurance" or an affiliate of Endurance, and when those consumers speak with Empire, Empire employs false and deceptive practices to steal customers from Endurance and induce Endurance's customers to purchase Empire's competing vehicle service contract products. Endurance now seeks temporary, preliminary, and permanent injunctive relief to stop Empire's Lanham Act violations, as well as seeking monetary damages and other relief.

2. Endurance was founded in 2006, and is one of the nation's premier direct-to-consumer providers of vehicle service contracts. Vehicle service contracts (sometimes referred to colloquially as extended auto warranties) supply consumers with peace-of-mind after a vehicle manufacturer's original warranty expires, and provide coverage for the cost of future repairs to consumers.

3. Specifically, vehicle service contracts help consumers avoid potential out-of-pocket repairs not otherwise covered by typical automobile insurance. Vehicle service contracts are aftermarket contracts offered by companies to cover future repair costs when a vehicle manufacturer's original warranty expires.

4. Through its service model, Endurance provides comprehensive and customer-centric auto protection. Endurance is one of the largest providers of vehicle protection coverage in the nation and is backed by A-rated insurance companies. Endurance enjoys an excellent reputation and the esteem of the consumers it serves, and of the industry, generally. Endurance is also fairly unique from other service providers in the vehicle service contract industry in that it does not outsource administration of claims to third parties, though it does sell some vehicle service contracts for other third-party administrators.

5. Endurance has worked hard through the years to develop its reputation under the Endurance brand and works harder to attract and maintain its customers. Endurance utilizes state-of- the-art, customized Customer Relationship Management software to identify and store customer leads and spends millions per year to market its products across a host of different platforms. Through these leads, Endurance prepares customized quotes for each potential customer, based on individualized information unique to the customer, such as the make and model of the car, year of manufacture, odometer readings, and other items.

6. Endurance is the owner of several trademark registrations, including U.S. Trademark Registration No. 4,781,129 for the mark "Endurance" for the services "providing extended warranties on motor vehicles." See Exhibit A (Registration Certificate).

7. Endurance has received numerous calls that Empire is impersonating Endurance in an effort to move, often successfully, customers from Endurance to Empire.

8. From what customers have identified to Endurance, Empire has developed and launched at least one online advertisement, where it impersonates Endurance. In addition, Empire is contacting Endurance's customers directly, and either impersonating Endurance or telling customers that they are directly affiliated with Endurance. Each of these actions are causing Endurance customers to move their business to Empire.

9. On information and belief and based on the placement of Empire's ads, Empire is paying for keyword searches with Endurance's "Endurance" trademark, so that Empire's website is populated at or near the top of the search results, further evidencing their intent to confuse consumers. By purchasing Endurance keywords through search engines, such as Google and Bing, Empire is causing consumers searching for Endurance to receive a search result, which includes Empire's website and/or telephone number.

10. Once Empire has deceived an Endurance customer into contacting Empire or initiated contact with an Endurance customer, in the course of these calls, Empire impersonates Endurance, misleading those consumers and inducing them to terminate their Endurance vehicle service contract and purchase Empire's competing vehicle service contract.

11. Endurance possesses recorded conversations in which its customers relay that Empire is impersonating Endurance or falsely representing some corporate affiliation to lead the Endurance customer to move their business to Empire, under the false impression that Empire is the correct Endurance entity or affiliate with which to hold a vehicle service contract.

12. Empire's conduct has led to the actual loss of business for Endurance.

13. By making these false and misleading statements, after driving customers to its website through use of Endurance's "Endurance" trademark, Empire has unlawfully diverted consumers from Endurance to Empire, damaged Endurance's goodwill and credibility in the marketplace, and unlawfully distorted competition, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

14. Before Endurance's customer relationships and goodwill are further eroded, Endurance seeks temporary, preliminary, and permanent injunctive relief to protect the intrinsic value of its customer relationships and goodwill, at a minimum.

15. Endurance also seeks all of the damages it has suffered as a result of Empire's ongoing actions.

16. Endurance further seeks enhancement of damages and its reasonable attorneys' fees because of Empire's willful and malicious acts.

## PARTIES

17. Plaintiff Endurance Warranty Services, L.L.C. is an Illinois limited liability company, with its principal place of business in Northbrook, Illinois.

18. Defendant Empire AutoProtect, LLC is a Delaware limited liability company, with its principal place of business in Dover, Delaware.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, because Endurance's Lanham Act claims raise federal questions. This Court has supplemental jurisdiction over the remaining claims, pursuant to 28 U.S.C. § 1367(a).

20. This Court has personal jurisdiction over Empire, and venue is proper in this District under 28 U.S.C. § 1391(a), because Empire committed and continues to commit tortious

acts in and related to this State, as well as having performed acts that constitute doing business within the state of Illinois.

21. As set forth herein, Empire has intentionally directed tortious conduct against Endurance, which they know to be located in Illinois.

22. In particular, Empire has created online search engine advertisements, to which Empire drives traffic through use of Endurance's "Endurance" trademarks, and through which Empire attempts to confuse Endurance customers into directing their calls, not to Endurance, but to Empire.

23. Once these customers reach Empire, Empire then engages in false advertising, making literally false and/or materially misleading statements about Endurance and its products, all in an attempt to divert business from Endurance, an Illinois-based company, to Empire.

24. Under the Illinois Long-Arm Statute and United States Supreme Court, Seventh Circuit, and Northern District of Illinois case law, this conduct by Empire gives this Court specific personal jurisdiction over Empire.

25. Venue also is proper in this district, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

26. Specifically, Empire sells vehicle protection plans nationwide, including to consumers in Illinois and within this judicial district. Additionally, Endurance's principal place of business is in Northbrook, Illinois, and it regularly conducts business in Illinois.

## EVENTS GIVING RISE TO THIS ACTION

### ENDURANCE'S BUSINESS

27. Since its founding in 2006, Endurance has worked hard to become the nation's premier direct-to-consumer provider of vehicle service contracts. Endurance provides the most

comprehensive and customer-centric auto protection, and is one of the largest providers of vehicle protection coverage in the United States.

28. In connection with the sale and marketing of its products, Endurance owns and utilizes a series of federally-registered trademarks. Through these marks, along with its ongoing national advertising, marketing, and promotional efforts, Endurance has generated substantial goodwill and consumer recognition.

29. By virtue of Endurance's extensive, continuous, and exclusive promotion and use of the Endurance marks to advertise, promote, distribute, and sell vehicle service contracts, consumers across the United States recognize the Endurance marks and the Endurance brand as belonging to Endurance; associate the services offered and sold under the Endurance marks exclusively with Endurance; and recognize and trust Endurance as the source of the vehicle service contracts offered for sale and sold under the Endurance trademarks.

30. Endurance has earned valuable goodwill from being recognized, associated with, and identified by consumers and the industry, in part because of its federally-registered trademarks.

31. Endurance sells and markets its plans throughout the United States, with the exception of California (in which it uses a third-party administrator to sell a different product than a vehicle service contract). Throughout its extensive and ongoing national advertising, marketing, and promotional efforts, Endurance has generated and continues to maintain substantial goodwill and customer recognition.

32. Because of its customer service, Endurance is a Better Business Bureau "Accredited Business."

33. Being an "Accredited Business" means that Endurance has demonstrated to the BBB that it has a commitment to ethical business standards, including building trust, advertising

honestly, telling the truth, being transparent, honoring promises, being responsive, safeguarding privacy, and embodying integrity.

34. Endurance has further demonstrated to the BBB that it is a reputable company, licensed, bonded, and insured; resolves complaints in a timely manner; follows through on its promises; and is committed to safe online transactions.

35. Endurance's recognition extends beyond the BBB, including but not limited to, winning three separate awards from Consumer Affairs' Buyers Choice Awards in 2025 for Best Customer Service, Best Value for Price, and Best Coverage Options, Newsweek's America's Best Online Platforms 2025, and receiving 21 separate Stevie Awards since 2014, including three in 2025 for Contact Center of the Year, National Sales Team of the Year, and Fastest Growing Company of the Year.

36. Endurance offers a series of different products, ranging from comprehensive coverage to more affordable plans that cover core components. Endurance's vehicle service contracts cover newer, low-mileage vehicles, as well as older, high-mileage cars.

37. Because of its customer service model and the coverage it provides, Endurance enjoys an excellent reputation in the industry and with the consumers it serves.

38. As part of its business model, when Endurance acts as the seller, it sells an Endurance contract the vast majority of the time, and unlike other service providers, Endurance is the direct administrator of its own vehicle protection plans. For these contracts, Endurance handles everything with the consumer directly, from quote to claim, meaning no middleman. As a small part of its business, Endurance will sell contracts on behalf of other third-party administrators, which administer those plans. This paragraph does not speak to those third-party administrator plans, but only the Endurance plans that Endurance sells and administers.

39. Because Endurance sells the vehicle service contract and administers the claims, Endurance is able to more quickly and effectively administer claims brought by its consumers of Endurance plans.

40. As part of its business model and plan value for the plans it sells and administers, Endurance pays the mechanic directly for auto repairs, including for all parts and labor.

41. Adding more value to customers, Endurance's protection plans are accepted by licensed repair facilities nationwide. For approved claims, Endurance also provides rental coverage with no deductible for up to five days, and provides towing at no cost for a certain preset amount of mileage.

42. Endurance also offers a number of other benefits through its plans, making it one of the most attractive options for individuals in the market for a vehicle service plan, and leading to it earning a host of awards.

43. To generate sales of vehicle service contracts to its customers, Endurance's customer leads are pre-generated. Endurance refers to its leads as "engaged leads," and these leads are stored in Endurance's CRM (Customer Relationship Management) software, and provided to its sales representatives to call.

44. The other means by which Endurance obtains leads is by individuals calling Endurance in response to Endurance's marketing materials. All leads contacted by a sales representative are pre-generated. Sales representatives do not engage in cold calling. Leads are not developed by sales people, but rather through prospective customers either calling Endurance directly or filling out a webform, expressing interest.

45. Endurance's customers seek out Endurance for vehicle service contracts, not the other way around.

46. Endurance almost exclusively sells vehicle service contracts lasting four-years or longer, with the full cost of the contract spread out over a set period of time, but paid on a monthly basis until the cost of the vehicle service contract is paid.

47. Endurance's pricing is generated on a car-by-car basis, based on things such as the make and model of the car, year of manufacture, odometer readings, and other items. With these specific inputs, Endurance's proprietary software generates a price proposal.

48. Because Endurance's customers seek out Endurance, not the other way around, there is no centralized location through which Endurance's customer list can be acquired by legitimate means, externally.

49. Endurance's customer list is among its most valuable confidential information, and constitutes a trade secret.

50. Endurance's trade secret customer list is not known in the industry or by the general public and gives Endurance a competitive advantage to win and retain business with its customer base. The value of such information remaining confidential and a trade secret is immeasurable, and is a driving factor in Endurance's several hundred million dollar per year business.

51. Unauthorized use of Endurance's trade secret customer list negatively and significantly impacts Endurance's ability to retain business. While Endurance does not have direct evidence of Empire having misappropriated Endurance's trade secret customer list, Endurance is highly concerned about the means by which Empire appears to be targeting Endurance's customers.

52. Phrased differently, it is impossible that Empire happens to be contacting Endurance's customers "randomly" and at will by merely opening the "phone book" and dialing the entire U.S. population.

53. Rather, it is far more probable that Empire has acquired a list of Endurance's customers and is contacting them and lying to them about Endurance's viability as a seller and administrator of vehicle service contracts, for the sole aim of diverting them to Empire's competing business.

**EMPIRE KNOWINGLY MAKES FALSE STATEMENTS ABOUT ITS RELATIONSHIP TO ENDURANCE TO STEAL CUSTOMERS FROM ENDURANCE**

54. Similar to Endurance, Empire is engaged in the business of selling vehicle service contracts.

55. Empire solicits business from consumers throughout the United States.

56. On September 18, 2026, Endurance, through its counsel, sent a cease and desist letter to Empire regarding the false statements that its sales representatives were making to Endurance's customers about Endurance and Empire's corporate or familial relationship to Endurance. A copy of Endurance's cease and desist letter is attached as Exhibit B.

57. Starting in late summer 2026, Endurance began receiving a series of cancellation calls and other calls from its customers.

58. The common theme from each of these calls was that a third-party, pretending to be Endurance, was impersonating Endurance when it reached Endurance customers, or those customers reached Empire through online advertisements instead of Endurance.

59. Once on the phone with Endurance's customers, those consumers reported to Endurance that Empire lied to those customers, telling them that it was corporately related to Endurance and that those customers needed to move their vehicle service contract to Empire. Often, the consumer contacted Endurance to ask about their refund or to understand what happened.

60. Empire is specifically targeting Endurance's customers by contacting them directly and maintaining online advertisements meant to lure consumers seeking to contact Endurance to contact Empire instead, and then deceiving consumers into believing that Empire is affiliated with Endurance, when Empire has no affiliation with Endurance.

61. Endurance's customers initiate the transaction with Endurance by either providing their contact information on an Endurance website, on a contracted marketing service provider's website, or by reaching out directly.

62. The fact that Empire is specifically targeting these customers and telling them false information that Empire is affiliated with Endurance, appears to be part of a deliberate scheme by Empire to confuse and defraud these customers, for the purpose of selling competing products to those customers.

63. Endurance has not and would not authorize a third party, including Empire, to attempt to move Endurance's customers to an unrelated third party, like Empire, either directly or through misleading online advertisements.

64. This conduct by Empire is unauthorized, is wrongful, and violates the Lanham Act and the common law.

65. Endurance's customers have relayed the following lies and misleading statements made by Empire's sales representatives:

a. Telling a consumer that they are Endurance's "third party" and they will not receive their coverage unless Empire runs their card (Ex. C at pp. 27-29);

b. Telling a consumer that Empire is Endurance's "umbrella" for auto policies in California, to sign up with Empire, and then the refund from Endurance will be applied to the Empire policy (Ex. D at p. 5);

c. Telling a consumer that Empire is a "broker for Endurance" (Ex. E at p. 27, 29); and

d. Telling a consumer that Empire was the "parent company" for Endurance (Ex. F at p. 4).

66. None of these statements were true.

67. In some of the calls that Endurance received, consumers indicated that the Empire representative on the call was a manager, demonstrating that Empire's scheme was not just some one-off rogue sales associate making these claims, but rather was an Empire-wide strategy to move Endurance customers to Empire.

68. In these calls, many consumers reported that they called "Endurance," were told that the customer's current plan did not cover their vehicle, to sign up for a new "Endurance" plan, and that they would be reimbursed for their old plan. Months later, the customer would call the real Endurance, and ask about their refund and why their old plan was not canceled. On the call with Endurance, the customer would identify information that Empire's representatives told them that led these customers to believe that Empire was Endurance and would handle the reimbursement, many times leading consumers to double pay Endurance and Empire for several months before they realize they are paying for two vehicle service contracts at the same time.

69. As a result of Empire's false or misleading statements of material fact to Endurance's customers, Endurance has lost customers and lost potentially countless others that did not provide this detail in cancelling their vehicle service contracts.

70. Empire also has developed and launched at least one online advertisement, where it impersonates Endurance, with the consumer alerting Endurance that he had Googled "Endurance extended warranty" or "Endurance extended warranty phone number" and was instead redirected to Empire.

71. On information and belief, Empire is paying for keyword searches with Endurance's "Endurance" trademark, so that Empire's online advertisement or website is populated at or near the top of the search results, further evidencing Empire's intent to confuse consumers. By purchasing Endurance keywords through search engines, such as Google and Bing, Empire is causing consumers searching for Endurance's customer service number to receive a search result list that includes Empire's phone number and website.

72. Empire is running these online advertisements either directly or by using third-party advertisers or lead generators. Lead generators are marketers who help vehicle service contract sellers, like Empire, identify individuals interested in purchasing a vehicle service contract. Here, Empire is either directly engaging in this conduct, or is hiring third parties who are, and are doing so with either Empire's express knowledge or with no oversight by Empire. In either case, Endurance's trademark is being infringed for Empire's direct benefit.

73. On or about September 18, 2026, outside counsel for Endurance sent a cease and desist letter to Nationwide by overnight and certified mail.

74. Endurance demanded that Empire cease its improper and unfair competition by spreading lies about Endurance. (*See* Exhibit B.)

75. Rather than respond, Empire rushed into the District of New Jersey, filing a declaratory judgment lawsuit against Endurance, seeking to absolve itself of its wrongful conduct. Endurance has moved to dismiss this lawsuit for a lack of personal jurisdiction, as Endurance is neither incorporated nor headquartered in New Jersey, and neither is Empire.

**EFFECT OF EMPIRE'S CONDUCT**

76. With Empire using literally false and materially misleading statements about Endurance and its continuing viability as a seller and administrator of vehicle service contracts, Endurance stands to lose substantial business as well as losing the value of its goodwill and

customer relationships, which cannot be adequately addressed at law. Empire's conduct violates the Lanham Act.

77. Empire has engaged in false advertising in violation of the Illinois Deceptive Trade Practices Act.

78. Empire's actions are deliberate, willful, and calculated to mislead consumers and to unfairly compete with Endurance.

79. Empire has acted with knowledge of the falsity of their statements.

80. Empire's concerted conduct and scheme have caused and continue to cause substantial harm to Endurance, its sales, its goodwill, and its business reputation.

81. All told, Empire is causing, threatening, and/or will continue to cause or threaten significant irreparable harm to Endurance, including the loss of long-standing customer relationships, loss of goodwill, loss of value of Endurance's trademarks, as well as damage to Endurance's reputation as an industry leader and its ability to successfully market its goods and services. Money alone cannot make Endurance whole.

## COUNT I

### VIOLATION OF LANHAM ACT, SECTION 43(A), 15 U.S.C. §1125(A) – FALSE OR MISLEADING DESCRIPTION OF FACT AS TO ENDURANCE

82. Endurance hereby repeats, realleges, and incorporates by reference the allegations that are contained in Paragraphs 1 through 81.

83. Empire's conduct, as described herein, constitutes false and misleading representations of fact in commercial advertising or promotion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84. Empire has intentionally made false and misleading statements to consumers, telling customers that Empire is affiliated with Endurance, including but not limited to, being Endurance's parent, agent, or "umbrella."

85. Each of these statements is literally false, material, and likely to deceive consumers and influence purchasing decisions by diverting customers from Endurance to Empire for the purchase of a vehicle service contract.

86. Empire's false and misleading statements have caused and continue to cause injury to Endurance, including loss of sales, diverted business, damage to goodwill, and harm to its business reputation and the value of its marks.

87. Endurance is entitled to recover its actual damages and Empire's profits, as well as temporary, preliminary, and permanent injunctive relief, enhanced damages, punitive damages, costs, and attorneys' fees.

## COUNT II
### VIOLATION OF LANHAM ACT, SECTION 32, 15 U.S.C. § 1114 – INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS

88. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 81.

89. Empire's use and continued use of the Endurance trademark in commerce in connection with the offering for sale of vehicle service contract products is likely to cause, and has in fact caused, confusion, mistake, or deception.

90. Empire is operating, maintaining, paying for, bidding on keywords for, or is otherwise affiliated with websites, web pages, and/or online web advertisements, holding themselves out to be "Endurance."

91. Empire is using these websites, web pages, and/or online web advertisements in commerce in connection with the offering for sale of vehicle service contracts in a way that is likely to cause and has, in fact, caused, confusion, mistake, and deception as to the true owner and user of Plaintiff's "Endurance" mark, and as to the true seller and administrator of the vehicle service contract provided by Plaintiff Endurance.

92. On information and belief, Empire is purchasing "Endurance" and derivations of that mark as keyword search terms for the purpose of promoting these deceptive "Endurance" websites.

93. Empire is purchasing the Endurance keywords in order to drive Endurance customers to contact Empire, instead of Endurance, as the customers intend.

94. Empire also is holding itself out as the owner, operator, and/or affiliate of Endurance.

95. In holding themselves out as "Endurance," Empire is causing consumers to believe Empire is affiliated, associated with, or are Endurance.

96. In holding themselves out as "Endurance," Empire is feeding off of Endurance's existing customers and contractual relationships.

97. In holding themselves out as "Endurance," Empire is interfering with Endurance's contractual relationships.

98. Empire does not have permission to use the Endurance mark.

99. Empire's use of the Endurance mark is intentional and willful.

100. Specifically, Empire has knowingly, willfully, and intentionally used Endurance's mark to advertise their vehicle service contracts through misleading online advertisements and holding itself out to be "Endurance," trading on the substantial goodwill and recognition of Endurance's mark by consumers in conjunction with vehicle service contracts.

101. Empire's knowing and intentional use of the Endurance mark in keyword advertising and in its sales pitches does, and was intended to cause confusion, to cause mistake, and to deceive consumers about the source of its competing vehicle service contracts.

102. Such conduct is and has led consumers to fall victim to confusion, believing that the Empire's advertisements are associated with, affiliated with, provided by, and/or endorsed by Endurance.

103. Indeed, numerous consumers believed that Empire was corporately related to Endurance, as a byproduct of their deceptive practices.

104. Trading on the success of the Endurance mark and Endurance's name recognition, Empire knowingly, willfully, and intentionally used and is using the Endurance mark in online advertising, keyword searches, and sales pitches to exploit Endurance's reputation, as well as the time, effort, and expense Endurance has invested in building its brand, which Empire exploited to infringe the Endurance mark.

105. As a result of the unlawful conduct of Empire, Endurance has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Empire's actions are enjoined by this Court. Endurance has suffered and will continue to suffer substantial damage to its reputation, goodwill, and sales.

106. Endurance is entitled to, among other relief, injunctive relief and an award of its actual damages (or, in the alternative, statutory damages, pursuant to 15 U.S.C. § 1117(c)), Empire's profits, enhanced damages and profits, costs, and attorneys' fees.

**COUNT III**
**DECEPTIVE TRADE PRACTICES – 815 ILCS §§ 510/1, *ET SEQ.***

107. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 81.

108. Empire has knowingly and willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.*, by

disparaging the goods, services, and/or business of Endurance through the use of false or misleading representations of fact.

109. The foregoing acts of Empire constitute willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 *et seq.*, for which Endurance is entitled to injunctive relief, attorneys' fees, and costs.

110. The foregoing acts of Empire will create a likelihood of injury to the public image and business reputation of Endurance, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.*, for which Endurance is entitled to injunctive relief.

111. The foregoing acts of Empire were designed intentionally to mislead and deceive the public, in violation of 815 ILCS §§ 510/1 *et seq.*, for which Endurance is entitled to injunctive relief.

112. The false and misleading statements made by Empire are causing and are likely to cause substantial injury to the public and to Endurance.

**COUNT IV**
**(ILLINOIS COMMON LAW – TORTIOUS INTERFERENCE WITH CONTRACT)**

113. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 81.

114. Endurance sells vehicle service contracts to consumers.

115. Empire has knowledge of the contractual relationships between Endurance and consumers, as Empire references these contracts in their sales calls with Endurance customers.

116. During those calls, Empire intentionally instructs customers how to cancel their Endurance contracts after purchasing Empire's contracts, and, in so doing, Empire provides false information about Endurance to induce the customers to terminate their contracts with Endurance.

117. Empire intentionally induces Endurance customers to terminate their contracts with Endurance. Empire's interference is improper as they do so through false and misleading statements.

118. Empire's conduct was willful and malicious and was done with an intent to harm Endurance.

119. As a direct result, Endurance has suffered and will continue to suffer monetary losses in an amount to be proven at trial. In addition to remedies in equity, Endurance seeks actual, incidental, compensatory, punitive, exemplary, and consequential damages, as well as attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Endurance Warranty Services, L.L.C., seeks judgment in its favor and an order against Defendant, Empire Auto Protect LLC, for the following relief:

A. Temporarily, preliminarily and permanently enjoining, without bond, Empire from utilizing false and deceptive practices, including claiming that Empire is affiliated with, corporately related, or is Endurance;

B. Temporarily, preliminarily and permanently enjoining, without bond, Empire from operating, maintaining, paying for, or being affiliated in any way with any website, web advertisement, or online search engine web page, holding itself out to be affiliated with Endurance in any way, including, but not limited to, being "Endurance;"

C. Awarding Endurance actual, incidental, compensatory, and consequential damages to be proven at trial;

D. Awarding Endurance exemplary or punitive damages in an amount to be proven at trial due to Empire's willful and malicious activities;

E. Awarding Endurance its reasonable attorneys' fees and costs; and

F. Awarding Endurance such further relief as the Court deems necessary and just.

DATED: November 20, 2026

Respectfully submitted,

**ENDURANCE WARRANTY SERVICES, L.L.C.**

By: */s/ Justin K. Beyer*
One of Its Attorneys

Justin K. Beyer (justin.beyer@saul.com)
Steven M. Malitz (steven.malitz@saul.com)
Joseph M. Kuo (josph.kuo@saul.com)
**Saul Ewing LLP**
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
Telephone: (312) 876-7100

*Attorneys for Plaintiff Endurance Warranty Services, L.L.C.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, does hereby certify that he caused a true and correct copy of the foregoing Plaintiff's Complaint with Exhibits A-F to be placed in the hands of a process server for service on this 20th day of November, 2026.

*/s/ Justin K. Beyer*
Justin K. Beyer